<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **PARASTU SHARIFI**,<br><br>Plaintiff,<br><br>v.<br><br>**TOWNSHIP OF EAST WINDSOR**, *et al.,*<br><br>Defendants. | Civil Action No. 21-18097 (ZNQ) (RLS)<br><br>**OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon Motions to Dismiss the First Amended Complaint filed by Defendants N.J. Division of Civil Rights ("DCR") ("DCR Motion", ECF No. 30), the Borough of Hightstown, the Hightstown Municipal Court, the Hightstown Police Department, Hightstown Police Officer Joel Townsend ("Townsend"), Hightstown Municipal Judge Seth Kurs ("Judge Kurs") (collectively, the "Hightstown Defendants") ("Hightstown Motion", ECF No. 31), and the Township of East Windsor ("East Windsor"), East Windsor Municipal Court ("EWMC"), East Windsor Police Department ("EWPD"), East Windsor Police Officer John Cate ("Cate"), East Windsor Sergeant David Oleksy ("Oleksy"), Court Administrator Kelli Hand ("Hand"), East Windsor Prosecutor Robert Janzekovich ("Janzekovich") and Judge Edward Herman ("Herman") (collectively, the "East Windsor Defendants") ("East Windsor Motion", ECF No. 32). DCR ("DCR Moving Br.", ECF No. 30-1), the Hightstown Defendants ("Hightstown Moving Br.", ECF No. 31-1), and the East Windsor Defendants ("East Windsor Moving Br.", ECF No. 32-1) filed Moving Briefs in support of their Motions. Plaintiff Parastu

Sharifi ("Plaintiff"), proceeding *pro se*, filed a brief in Opposition to DCR's Motion ("Opposition," ECF No. 37), to which DCR did not reply.  Plaintiff did not oppose the Hightstown Motion and the East Windsor Motion.  Also pending is Plaintiff's Motion for Recusal of Judge Quraishi ("Recusal," ECF No. 35) and Motion for Extension of Time to Respond to DCR's Motion ("Extension Motion", ECF No. 33).

The Court has carefully considered the parties' submissions and decides the Motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the reasons set forth below, the Court will DENY Plaintiff's Motion for Recusal, GRANT Plaintiff's Extension Motion, GRANT DCR's Motion to Dismiss, GRANT Hightstown Motion to Dismiss, and GRANT East Windsor's Motion to Dismiss.

## I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this action on October 5, 2021 by filing her original Complaint.  (ECF No. 1.)  In the following two months, the Hightstown Defendants and former Defendant Mercer County filed Motions to Dismiss.  (ECF Nos. 7, 10.)  On January 6, 2022, Plaintiff filed a Motion for Leave to Amend the Pleadings.  ("Mot. to Amend", ECF No. 15.)  Plaintiff's Motion to Amend indicated that she wished to dismiss Defendant Mercer County.  (Mot. to Amend at 2.)  The Court construed this as a voluntary dismissal as of right under Fed. R. Civ. P. 41(a)(1)(i) and dismissed Defendant Mercer County without prejudice.  Moreover, Plaintiff's Motion to Amend was granted as of right pursuant to Fed. R. Civ. P. 15(a)(1)(B) and Plaintiff was given nine days to file her Amended Complaint, which she did on May 24, 2022.  ("FAC", ECF No. 29.)

While not a model of clarity, the FAC apparently alleges that Defendants have, at one point or another, violated her civil rights.  (*See generally*, FAC.)  With respect to the Hightstown Defendants, it seems as though Plaintiff alleges that Townsend mistakenly gave her four traffic

tickets during one traffic stop, committed perjury after Plaintiff contested those tickets, and Judge Kurs wrongly held her accountable for two of those four tickets.  (*Id.* ¶¶ 20–27.)  Plaintiff was racially discriminated against by the East Windsor Defendants after they failed to arrest Plaintiff's neighbor after assaulting her (*id.* ¶¶ 28–33), failed to properly adjudicate her claims, and prevented her from accessing the judicial system (*id.* ¶¶ 34–38).  Lastly, she was racially discriminated against by the DCR after she filed a complaint with them that they ultimately closed.  (*Id.* ¶¶ 42–49).  As such, the FAC alleges six counts: a violation of her civil rights under 42 U.S.C. §1981 (Count I), 42 U.S.C. § 1983 (Count II), 42 U.S.C. § 1985 (Count III), the Fourteenth Amendment and New Jersey Constitution Article I (Count IV), New Jersey Rev. Stat. § 41:1-2 (Count V), and New Jersey Rev. Stat. § 2B:25-5 and East Windsor Ordinance § 2-3.14A (Count VI).

## II.   **MOTION FOR RECUSAL**

By her Recusal Motion, Plaintiff requests recusal of the undersigned because of the Court's "failure to recognize this female Pro se Litigant as a legitimate litigator with a Constitutional's [sic] right to represent herself, and by the way of halting and ignoring her numerous Concerns and Motions."  (Recusal at 2.)  Insofar as the Motion does not specify under which statute it seeks to proceed, the Court considers it under both 28 U.S.C. § 144 and 28 U.S.C. § 455.

Under 28 U.S.C. § 144, a federal district court judge must recuse if a party "files a timely and sufficient affidavit that the judge . . . has a personal bias or prejudice either against [that party] or in favor of any adverse party."  *Hill v. Carpenter*, 323 F. App'x 167, 170 (3d Cir. 2009).  Here, however, Plaintiff did not include an affidavit with the Motion.  Recusal is therefore not appropriate under this section. *Meleika v. City of Bayonne*, Civ. No. 21-11394, 2022 WL 2357482, at *6 (D.N.J. June 29, 2022) (denying recusal under § 144 for failure to file supporting affidavit).

Under 28 U.S.C. § 455(a) "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  The test under § 455(a) is an objective one: "whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned."  *Allen v. Parkland Sch. Dist.*, 230 F. App'x 189, 193 (3d Cir. 2007) (citing *In re Kensington*, 353 F.3d 211, 220 (3d Cir. 2003)).  Here, the Recusal Motion is based solely on Plaintiff's perception that her case is moving too slowly and that the undersigned does not recognize her as a pro se litigant.  It asserts no other basis.  The delay the Recusal Motion cites is from March 2, 2022 (when Plaintiff claims she filed a separate Motion for Recusal) to July 1, 2022 (when the Recusal Motion was filed).  While this purported delay is less than four months, the Court has thoroughly reviewed Plaintiff's docket and cannot ascertain what Motion for Recusal she alleges she filed on March 2, 2022.  In fact, a review of the docket indicates that there was no activity *at all* in this case in the month of March, and no such Motion for Recusal was filed before July 1, 2022.

Moreover, Plaintiff's allegation that the undersigned does not recognize her as a pro se litigant is wholly without merit.  Rather, the undersigned appreciates Plaintiff's pro se status as is evidenced by his adjudication of this case.  Notably, the undersigned has already granted Plaintiff's Motion to Amend her Complaint—an action indicative of the undersigned's recognition of her as a legitimate litigant in this case.  In short, "[t]h[ese] claim[s], which [are] speculative and conclusory, do not warrant recusal."  *In re Onishi*, 856 Fed. Appx. 426, 427 (3d Cir. 2021); *see also Brown v. United States*, 823 Fed. App'x 97, 103-14 (3d Cir. 2020)(citations and quotations omitted) ("[A] judge's recusal is not required on the basis of unsupported or highly tenuous speculation"); *In re Burnett*, 740 Fed. App'x 235, 236 (3d Cir. 2018)(citations and quotations

omitted) ("[R]ecusal is not required on the grounds of unsupported, irrational, or highly tenuous speculation").  Therefore, on these facts, the Court cannot find that a reasonable person would conclude the undersigned's impartiality might reasonably be questioned.  *See Allen v. Utah State Prison*, Civ. No. 16-324, 2017 WL 481417 (D. Utah Feb. 6, 2017) (denying recusal motion based entirely on a plaintiff's complaint that his case was moving too slowly).  The Recusal Motion will therefore be DENIED.

## III.   **MOTION FOR EXTENSION OF TIME**

On May 24, 2022, DCR submitted its Motion to Dismiss the FAC.  (ECF No. 30.) Plaintiff's opposition was due June 7, 2023 but she did not file one on that date.  Instead, on June 13, 2022, Plaintiff filed the instant Motion for Extension of Time to respond to the DCR Motion. (ECF No. 33.)  For its part, DCR did not file an opposition to her request for additional time. Plaintiff subsequently filed her Opposition to DCR's Motion to Dismiss on July 6, 2022.  (ECF No. 37.)

The Court will grant Plaintiff's Motion for an Extension of Time and consider her late-filed opposition for two reasons.  First, her Motion was unopposed.  Second, the Court is obligated to analyze the merits of DCR's Motion to Dismiss regardless of whether it is unopposed or not.  It would be improper to merely grant it as unopposed given Plaintiff's pro se status.  *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991).

## IV.   **LEGAL STANDARD**

### A.  12(b)(1)

Under Rule 12(b)(1), a court may dismiss a claim if it lacks subject-matter jurisdiction. *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).  A Rule 12(b)(1) motion can raise a facial attack or a factual attack, which determines the standard of review.  *Constitution Party of*

*Pennsylvania v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014).   A facial attack "is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal question … or because some other jurisdictional defect is present." *Id.* at 357.   In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." *Id.* at 358.   "A factual attack concerns the actual failure of [plaintiff's] claims to comport with the jurisdictional prerequisites." *CAN v. United States*, 535 F.3d 132, 139 (3d Cir. 2008); *see id.* ("So, for example, while diversity of citizenship might have been adequately pleaded by the plaintiff, the defendant can submit proof that, in fact, diversity is lacking.")   When considering a factual challenge, "the plaintiff [has] the burden of proof that jurisdiction does in fact exist," the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," and "no presumptive truthfulness attaches to [the] plaintiff's allegations...." *Mortenson v. Fest Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

**B.  12(b)(6)**

District courts undertake a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Malleus v. George,* 641 F.3d 560,563 (3d Cir. 2011).   "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009) (quotation omitted).   In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-

6

defendant-unlawfully-harmed-me." *Iqbal,* 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).   "[M]ere restatements of the elements of [a] claim[] . . .  are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (quotation omitted).   Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler,* 578 F.3d at 211 (quoting *Iqbal,* 556 U.S. at 679).   "The defendant bears the burden of showing that no claim has been presented."   *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

Rule 12(b)(6) "prohibits the court from considering matters outside the pleadings in ruling on a motion to dismiss for failure to state a claim . . .  and a court's consideration of matters outside the pleadings converts the motion to a motion for summary judgment."   *Kimbugwe v. United States,* No. 12-7940, 2014 WL 6667959, at *3 (D.N.J. Nov. 24, 2014).   "[A]n exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."   *In re Burlington Coat Factory Secs. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted) (internal quotation marks omitted).   Notwithstanding these principles, courts may not consider allegations raised for the first time in a plaintiff's opposition to a motion to dismiss.   *See Pennsylvania. ex rel Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (internal quotation omitted)).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly,* 550 U.S. at *555*

(quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)) (alteration in original).   "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citation omitted).   Nonetheless, "a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because [he] proceeds pro se." *Thakar v. Tan,* 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted).   Thus, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.,* 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## V.   **DISCUSSION**

### A.   **DCR**

DCR is one of the multiple defendants named in Counts I-IV.  Specifically, Plaintiff alleges that she filed complaints with the DCR against the East Windsor and Hightstown officials that violated her constitutional rights.   (FAC ¶ 42.)   DCR subsequently subjected her to racial discrimination after terminating her complaints.   (*Id.* ¶¶ 49–50.)  In its Motion to Dismiss, DCR argues that it is entitled to Eleventh Amendment sovereign immunity (Moving Br. at 9), the Court lacks subject matter jurisdiction of Plaintiff's claims pursuant to the *Rooker-Feldman* doctrine (*id.* at 15), and Plaintiff has not stated a plausible claim for declaratory and injunctive relief (*id.* at 15, 19).

DCR is correct that Plaintiff's claims against it cannot proceed because "claims against the State of New Jersey Division on Civil Rights are barred by sovereign immunity." *Seward v. N.J. Div. on Civil Rights,* Civ. No. 11-1143, 2012 WL 1067917, at *3 (D.N.J. Mar. 7, 2012); *see also* U.S. Const. amend. XI; *Alden v. Maine*, 527 U.S. 706, 712-13 (1999).  Accordingly, Plaintiff's claims against DCR will be dismissed without prejudice.

## B.     HIGHTSTOWN DEFENDANTS

Counts I–V of the FAC allege claims against the Hightstown defendants.  (*See generally,* FAC.)  Hightstown Defendants seek dismissal of Counts I, II, III, and V.

Plaintiff's allegations against the Hightstown Defendants center on events that occurred on August 19, 2019, when Hightstown Police Officer Joel Townsend issued Plaintiff four traffic tickets.  (FAC, ¶ 20.)  Plaintiff claims this was the second time Hightstown police stopped her in a six-month time frame, leading to a total of six tickets—a result of the racially discriminatory police department.  (*Id.*)  Plaintiff disputed her traffic tickets, and her case was heard on February 12, 2020, after being rescheduled five times.  (*Id*. ¶¶ 21–23).  Plaintiff claims that Townsend lied under oath when asked to testify about Plaintiff's traffic violations.  (*Id.* ¶ 23.)  Plaintiff purportedly tried to present "dash cam" footage to impeach Townsend, but Judge Kurs "willingly, maliciously, and with disregard to truth, refused to allow her to submit her evidence that was obtained through discovery and relevant to the subject matter of the trial."  (*Id*. ¶ 24.)  Lastly, Plaintiff claims that Judge Kurs presided over the case albeit as an "unsworn" official in violation of NJ Rev Stat §41:1-2.  (*Id*. ¶ 29.)

The Hightstown Defendants argue that Plaintiff fails to state a claim upon which relief can be granted (Hightstown Moving Br. at 8), local police departments are not separate judicial entities subject to suit (*id.* at 23), Plaintiff's claims against Townsend are duplicative of her claims against Hightstown (*id.* at 24), Judge Kurs is protected by judicial immunity (*id.* at 25), and the Hightstown Defendants are immune from liability for punitive damages (*id.* at 26).

Even construing the FAC liberally, Plaintiff fails to allege cognizable civil rights violations.  Rule 8(a) requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Generally, this rule is liberally

construed, *see* Fed. R. Civ. P. 8(f); *Conley v. Gibson*, 355 U.S. 41 (1957); a liberal construction is particularly important where the pleader is acting pro se. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). "The plaintiff need only state a set of facts giving rise to a claim, and not the legal theory behind the claim, so long as the defendant has enough information to frame an answer and to commence discovery." *Barlow v. Pep Boys, Inc.*, 625 F. Supp. 130, 132 (E.D. Pa. 1985) (citing *Moorish Sci. Temple of Am., Inc., v. Smith*, 693 F.2d 987, 989 (2d Cir. 1982) (pro se habeas corpus petition was construed as a Section 1983 claim)). The Third Circuit requires specific factual allegations in support of the claim for relief when a civil rights violation is alleged, even when the pleader is acting pro se. *See, e.g., Kauffman v. Moss*, 420 F.2d 1270, 1275–76 (3d Cir. 1970). The Court considers the adequacy of the allegations supporting the FAC's claims against the Hightstown Defendants below.

### 1.    Section 1981 (Count I)

Section 1981, which prohibits racial discrimination provides, in relevant part, the following:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other.

42 U.S.C. § 1981. To state a claim under § 1981, a party must allege facts sufficient to show: "(1) the plaintiff is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute . . . " *Gross v. R.T. Reynolds, Inc.*, 487 F. App'x 711, 716 (3d Cir. 2012) (quoting *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001)). A complaint that fails to state any facts in support

of the conclusion that the wrongful acts by the defendants were motivated by discriminatory animus fails to state a plausible § 1981 claim. *Id*. at 716–17.

First and foremost, Plaintiff never alleges that she is a member of a racial minority. Although she broadly alleges that "Hightstown police officers are well known to the local residents for racially profiling the residents" (FAC ¶ 20) and "East Windsor officials as well as Hightstown officials have a long history of [r]acially profiling minorities" (*id.* ¶ 30), she never specifies that she is a racial minority protected by Section 1981. Plaintiff also subsequently fails to allege that Defendants discriminated against her on the basis of race. Given that Plaintiff fails to allege that she is a member of a racial minority and the Hightstown Defendants discriminated against her on the basis of her race, the Court will dismiss the § 1981 claim (Count I) without prejudice. *See Smart v. Twp. of Winslow*, Civ. No. 13-4690, 2015 WL 5455643, at *3 (D.N.J. Sep. 16, 2015) (dismissing the plaintiff's Section 1981 claim because the plaintiff had not alleged any facts in support of his claim that the defendant's conduct was motivated by racial discrimination.); *see also Wardlaw v. City of Philadelphia*, Civ. No. 18-1128, 2018 WL 1403889, at *2 (E.D. Pa. Mar. 20, 2018) (dismissing the plaintiff's Section 1981 claim because the plaintiff failed to allege that he is a member of a racial minority and the defendants discriminated against him on the basis of his race.).

### 2.      Section 1983 (Count II)

Count II of the FAC alleges a 42 U.S.C. § 1983 claim. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

11

42 U.S.C. § 1983.  To succeed on a § 1983 claim, a plaintiff must allege two things: first, a violation of a right under the Constitution, and second, that a "person" acting under color of state law committed the violation.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  "[M]unicipalities and other local government units [are] . . . persons to whom § 1983 applies."  *Monell v. Department of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978).  Under *Monell*, "[a] municipality is liable under § 1983 when a plaintiff can demonstrate that the municipality itself, through the implementation of a municipal policy or custom, causes a constitutional violation."  *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991) (citing *Monell*, 436 U.S. at 691–95).  Thus, a municipality may be sued directly if it is alleged to have violated the plaintiff's constitutional rights through "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that [municipality's] officers."  *Monell*, 436 U.S. at 690.  In addition, a municipality may be sued under § 1983 "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."  *Id.* at 690-91.

Plaintiff, however, fails to sufficiently state a claim of a violation of a right under the Constitution.  Throughout the FAC, Plaintiff broadly claims that many of her constitutional rights were violated, but she has not articulated, nor can the Court intuit, exactly what constitutional rights she believes were infringed.   In broad strokes Plaintiff makes generic claims about Defendants being generally racially discriminatory, but fails to allege that they were racially discriminatory against her.   Plaintiff does make the general allegation that her Fourteenth Amendment right to due process was violated, but again fails to plead any specific facts supporting her allegation.  Since Plaintiff was unable to sufficiently articulate a violation of a right under the

Constitution, her Section 1983 claims as against the Hightstown Defendants will be dismissed without prejudice. *West*, 487 U.S. at 48.

### 3.    Section 1985 (Count III)

The FAC also alleges conspiracy pursuant to 42 U.S.C. § 1985. Namely, Plaintiff alleges that "[DCR] conspired through work on an unknown individual/s to abruptly put an end to this investigation of a police department with years of wrongdoings, in disregard to Plaintiff's constitutional rights." (FAC ¶¶ 58, 69, 80.) However, Plaintiff does not state under which subsection of § 1985 she makes this claim. The Supreme Court of the United States has interpreted both § 1985(3) and the second clause of § 1985(2) similarly, finding that each contains language "requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws." *Kush v. Rutledge*, 460 U.S. 719, 725 (1983). "[C]laims under Section 1985 must be pled with specificity in order to withstand a motion to dismiss. Broad, conclusory allegations, unsupported by specific facts implicating specific defendants are insufficient to state a claim upon which relief can be granted." *Handelman v. New* Jersey, Civ. No. 16-2325, 2016 WL 3691976, at *11 (D.N.J. July 12, 2016) (quoting *Martin v. Delaware Law Sch. of Widener Univ.*, 625 F. Supp. 1288, 1297 (D. Del. 1985)). It is well-settled that "intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.*, 460 U.S. at 726. The FAC fails to state a claim for conspiracy under Section 1985 for three reasons.

First, as with her Section 1983 conspiracy claims, Plaintiff has failed to allege sufficient facts from which the Court could infer an agreement or understanding among the Defendants to violate her rights. Second, the FAC does not allege any actionable form of "invidious discriminatory animus." Nowhere in the Amended Complaint does Plaintiff allege that her

mistreatment was based on her race.  Most importantly, Plaintiff has not pled a conspiracy with specificity because she "fails to allege any agreement or understanding among or between any of the defendants to plot, plan or conspire to violate h[er] constitutional rights."  *Gay v. City of Philadelphia*, Civ. No. 03-5358, 2005 WL 1844407, at *7 (E.D. Pa. Aug. 2, 2005).  Rather, she makes the broad, conclusory allegation that DCR conspired with "an unknown individual" to hinder "Plaintiff's constitutional rights."  (FAC ¶¶ 58, 69, 80.)  Even read in a light most favorable to Plaintiff, it cannot be reasonably inferred from the allegations of the FAC that DCR was involved in a Section 1985 conspiracy, nor that any Defendants were motivated to deprive Plaintiff of equal protection or justice under the law because of her race.  Moreover, Plaintiff cannot survive a motion to dismiss based on broad, conclusory allegations, unsupported by specific facts implicating specific defendants.  *Iqbal*, 556 U.S. at 678–80.  Accordingly, Plaintiff's Section 1985 conspiracy claims against the Hightstown Defendants will be dismissed without prejudice.

### 4.      Violation of NJ Rev. Stat. § 41:1-2 (Count V)

Count V of the FAC alleges that Hightstown Municipal Judge Kurs presided over Plaintiff's municipal traffic proceedings as an unsworn official in violation of state law.  (FAC ¶ 96).  As a result, Plaintiff claims she is entitled to damages, including punitive damages, caused by Hightstown "allow[ing] an unsworn Judge to remain on the bench while himself ignoring the NJ laws, yet enforcing the law on others by fining people over phony traffic violations for PROFIT and REVENUE."  (*Id*.) (emphasis in original).

N.J.S.A. 41:1-2, which addresses the oath of office required of individuals elected or appointed to governmental positions in New Jersey, provides as follows:

> The governor for the time being of this state, and every person who shall be appointed or elected to any office, legislative, executive or judicial, under the authority of this state, or to any office in the militia thereof, and every counselor, solicitor and attorney at law, shall, before he enters upon the execution of his trust, office or duty,

take and subscribe the oath of allegiance prescribed by section 41:1-
1 of this title.

N.J.S.A. 41:1-2.  As a threshold matter, the statute, by its express terms does not provide for a

private cause of action.   Further, Plaintiff vaguely asserts that she reviewed documents that

substantiate the judge was "unsworn" but fails to identify those documents or in any way plead

specific facts to support her claim.  Even assuming this allegation is true, Plaintiff fails to plead

any nexus between the lack of an oath and her allegations in this case.  Accordingly, Count V of

the FAC will be dismissed without prejudice.

### C.   EAST WINDSOR DEFENDANTS

Counts I–IV and Count VI of the FAC allege claims against the East Windsor defendants.

(*See generally,* FAC.)  On February 14, 2020, Plaintiff filed her first Citizen Criminal Complaint

against a neighbor for "Harassment."  (FAC ¶ 37.)  The case was set for trial before Judge Herman

on March 29, 2021.  (*Id*.)  Prosecutor Robert Janzekovich had previously advised Plaintiff to drop

the case and did not appear for the trial, causing Plaintiff to proceed pro se.  (*Id*.)  Plaintiff alleges

that, throughout the trial that was held over zoom, she was muted by the court's staff administrator

Kelli Hand, which denied "her a chance to express her legal arguments, concerns, and due

process," and was further removed from the virtual hearing completely.  (*Id*.)

Furthermore, Plaintiff claims that on August 11, 2020, she was assaulted by her neighbor.

(*Id.* ¶ 28.)  East Windsor police officers, including Oleksy and Cate, were called to the scene and

did not find probable cause to arrest Plaintiff's neighbor.  (*Id*. ¶¶ 28, 33.)  East Windsor police

officers further advised Plaintiff and her neighbor that, at their option, they could file "Private

Criminal Charges" against one another.  (*Id.* ¶ 29.)  On August 12, 2020, Plaintiff, with the help

of Sergeant Scott Brown, of the EWPD, filed a "Simple Assault" charge against her neighbor.  (*Id.*

¶ 31.)   Thereafter, Plaintiff's neighbor filed "False assault and Trespassing" charges against Plaintiff.  (*Id.* ¶ 34.)

Plaintiff made an Open Public Records Act request for the bodycam videos of the East Windsor police officers regarding the events on August 11, 2020.  (*Id.* ¶ 32.)  In the videos, Plaintiff observed Oleksy and Cate: 1) fist bumping Plaintiff's neighbor, 2) calling him "Bro" 3) "telling him that he would be in the back of the police car, if [] it was any other woman except her" and 4) "advised him that next time to call them so they could use[] their power through their uniform and title to deal with her."  (*Id.* ¶ 33.)

In or about January 2021, Plaintiff filed a complaint with the DCR regarding the failure of the East Windsor police officers "[t]o Serve and Protect, and to perform their duties Impartial."  (*Id.* ¶¶ 42–43.)  On September 20, 2021, the DCR closed the matter, after receiving the EWPD's Answer.  (*Id.* ¶¶ 46, 49.)  From January 15, 2021, through February 10, 2021, Plaintiff filed "approximately" eight different "Citizen Criminal Charges" that have been "BLOCKED," with no additional details, by the EWMC.  (*Id*. ¶ 36.)

In their Moving Brief, the East Windsor Defendants argue that the claims against Judge Herman and Janzekovich should be dismissed because they are both protected by absolute immunity.  (East Windsor Moving Br. at 7, 9.)  Furthermore, Counts I and IV should be dismissed because they involve the same conduct as does the Section 1983 (Count II) claim and are therefore redundant, (*id*. at 10) and the Section 1983 (Count II) claim should be dismissed because Plaintiff's allegations are insufficient to assert a Section 1983 claim (*id.* at 20).  Moreover, since Plaintiff does not provide any details of the basis of the alleged discrimination and alleged conspiracy, Counts IV and V should be dismissed as well.  (Moving Br. at 28, 29.)  Lastly, because there is no

private remedy available for the alleged municipal code violation, Count VI should also be dismissed.  (Moving Br. 29.)

### 1.    Sections 1981 and 1985 (Counts I and III)

Pursuant to the same analysis and reasoning used V.B.1 and V.B.3 *supra*, the Court will dismiss these claims without prejudice as Plaintiff has failed to sufficiently state a claim.

### 2.    Section 1983 (Count II)

Count II of the FAC alleges a 42 U.S.C. § 1983 claim.  Although it is never expressly stated, the Court interprets the FAC to make a claim of denial of access to the courts that amounted to a Section 1983 violation.  Specifically, Plaintiff alleges that the court's staff administrator would mute her during the court proceedings held over zoom so as to "deny[] her the chance to express her legal arguments, concerns, and due process," further kicked out of the zoom sessions, and was generally blocked from the court.  (FAC ¶ 37.)

The East Windsor Defendants argue that Plaintiff "provides no specifics of the nature of the [complaints] or the reasons given for the EWMC allegedly blocking them.  She also does not explain what evidence or legal argument that she was unable present at . . . trial.  Plaintiff's conclusory claims of being denied due process and/or equal protection are not enough."  (East Windsor Moving Br. at 18.)

In *Christopher v. Harbury,* the U.S. Supreme Court set forth specific criteria that a court must consider in determining whether a plaintiff has alleged a viable claim of right to access to the courts.  536 U.S. 403, 415.  Specifically, the Supreme Court held that, in order to state a claim for denial of access to courts, a party must identify all of the following in the complaint: 1) a non-frivolous, underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit.  *Id*.  The Court explained that the first requirement mandated that a plaintiff specifically state in the complaint the

underlying claim in accordance with the requirements of F.R.C.P. 8(a) to the same degree as if the underlying claim was being pursued independently. *Id.* at 417. In this regard, the statement must be sufficiently specific to ensure that the district court can ascertain that the claim is not frivolous and that the "the arguable nature of the underlying claim is more than hope." *Id.* The second requirement is that a plaintiff clearly allege in the complaint the official acts that frustrated the underlying litigation. *Id.* Third, a plaintiff must specifically identify a remedy that may be awarded as recompense in a denial-of-access case that would not be available in any other future litigation. *Id.* at 414. This final requirement is important in order "to hedge against the risk that an access claim be tried all the way through, only to find that the court can award no remedy that the plaintiff could not have been awarded on a presently existing claim." *Id.* at 416.

Although the Court takes claims of denial of access to court very seriously, the FAC does not successfully plead Plaintiff's claim. She has not indicated what remedy, if any, would be unavailable in future litigation. Rather, Plaintiff's denial of access claim revolves around her inability to adequately represent herself over zoom. While zoom proceedings were used heavily at the height of the COVID-19 pandemic, the New Jersey Supreme Court has since instructed the lower state courts to "generally proceed in person" for the majority of hearings, arguments, and trials. (Order from Chief Justice Stuart Rabner issued October 27, 2022.) Consequently, the Court does not foresee Plaintiff encountering similar issues in future litigation. For these reasons, the Court will deny Plaintiff's Section 1983 claim as against the East Windsor Defendants without prejudice.

### 3. Fourteenth Amendment and New Jersey Constitution Article I (Count IV)

In Count IV of the Complaint, Plaintiff asserts a discrimination claim based on the New Jersey Constitution, Article I, § V as well as the Fourteenth Amendment. Although Plaintiff fails

to allege the basis for these violations, she does note that "Defendants retaliated against the Plaintiff by abusing the government office and by using their position of power to block Plaintiff from getting protection under the law and seeking justice . . . ."  (FAC ¶ 88.)

The East Windsor Defendants argue that, because Plaintiff's allegations do not provide any detail as to the basis for the alleged discrimination against her, this claim should be dismissed. (East Windsor Moving Br. at 2, 28.)

Article I, § V of the New Jersey Constitution provides: "[n]o person shall be denied the enjoyment of any civil or military right, nor be discriminated against in the exercise of any civil or military right, . . . because of religious principles, race, color, ancestry or national origin."

"The standard for an equal protection claim under the U.S. Constitution is analogous to the standard for an equal protection claim under the New Jersey Constitution."  *Wilson v. Murphy*, Civ. No. 20-2272, 2020 WL 7022629, at *6 (D.N.J. Nov. 30, 2020).  Article I, paragraph 1, of the New Jersey Constitution provides: "All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness."  Although the term "equal protection" does not specifically appear in the New Jersey Constitution, Article I, paragraph 1 has been interpreted to confer a right analogous to that available under the Fourteenth Amendment of the U.S. Constitution.  *Secure Heritage, Inc. v. City of Cape May*, 361 N.J. Super. 281 (N.J. Super. Ct. App. Div. 2003) (citing *Doe v. Poritz*, 142 N.J. 1 (N.J 1995)).

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne*

*Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  Therefore, to state a claim under the Equal Protection Clause, a plaintiff must allege: (1) she is a member of a protected class; and (2) she was treated differently from others similarly situated.  *See id*.  Where the plaintiff does not claim membership in a protected class, she must allege arbitrary and intentional discrimination to state an equal protection claim.  *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Specifically, the plaintiff must state facts showing that: "(1) the defendant treated her differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."  *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006).

Here, the FAC fails to state an equal protection claim in at least two respects.  First, Plaintiff never alleges that she is a member of a protected class.  While the FAC broadly claims that Hispanics are targets of discrimination, Plaintiff does not allege that she is Hispanic, or any other race or ethnic group.  Plaintiff cannot maintain a discrimination case without identifying what protective class to which she belongs.  Second, Plaintiff does not allege that she was treated differently from others similarly situated.  In fact, the Court cannot intuit who "others similarly situated" may be because, other than being a female, Plaintiff does not allege she belongs to any group.  Nor does Plaintiff allege she was treated differently from other females.  For these reasons, the Court concludes that Plaintiff has not alleged an equal protection violation, and Count IV of her FAC will be dismissed without prejudice.

### 4.      Prosecutor Robert Janzekovich (Count VI)

The crux of Count VI of the FAC revolves around Prosecutor Janzekovich's failure to prosecute some of Plaintiff's private citizen complaints, in violation of N.J.S.A 25-5.  (FAC ¶¶ 100–07.)  Plaintiff claims that Janzekovich is liable to her because he made the decision to not prosecute a couple of private citizen complaints filed by Plaintiff.  (FAC ¶ 37.)  However,

Janzekovich's decision not to prosecute Plaintiff's complaints is protected by prosecutorial immunity. *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976). The Supreme Court has held that "a state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit. *Id.* This immunity applies to any action "intimately associated with the judicial phase of the criminal process" while a state prosecuting attorney is advocating for the State. *Id.* at 430–31. Indeed, it is well-settled that actions taken while in court, as well as actions intimately involved in the judicial process, including deciding whether to charge a suspect, evaluating evidence, and interviewing witnesses in preparation for trial, are all activities protected by absolute immunity. *See Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir. 1992). It is equally clear that a "decision not to prosecute a case is intimately tied to the judicial process and is thus entitled to absolute immunity." *Thrower v. Defazio*, Civ. No. 09-5864, 2010 WL 55487, at *5 (D.N.J. Jan. 5, 2010) (citing *Botello v. Gammick*, 413 F.3d 971, 977 (9th Cir.2005)). By choosing not to prosecute Plaintiff's claims, Janzekovich was acting well within the scope of his duties and is thus protected by absolute immunity. Accordingly, Count VI of the FAC and Prosecutor Janzekovich will be dismissed with prejudice. *See Moore v. Middlesex Cnty Prosecutor's Office*, 503 F. App'x 108, 109–110 (3d Cir. 2012) (per curiam) (dismissal of complaint with prejudice based on absolute prosecutorial immunity was proper).

## VI.   <u>CONCLUSION</u>

For the reasons stated above, the Court will DENY Plaintiff's Motion for Recusal, DENY Plaintiff's Extension Motion, GRANT DCR's Motion to Dismiss, GRANT DCR's Motion to Dismiss, GRANT Hightstown Motion to Dismiss, and GRANT East Windsor's Motion to Dismiss. Plaintiff will be granted leave to amend her Complaint within 30 days, any amendments

to be limited to remedying the defects in her Complaint that were identified in this Opinion.  An appropriate Order will follow.


Date: **February 23, 2023**

                                                        s/ Zahid N. Quraishi
                                                        **ZAHID N. QURAISHI**
                                                        **UNITED STATES DISTRICT JUDGE**